IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

MARCELLA CAWIEZELL

Plaintiff,

v.

CENTURA HEALTH CORPORATION, a Colorado Corporation

Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Marcella Cawiezell ("Cawiezell") states as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 and § 1331 and this action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5, 29 U.S.C. § 626 and 29 U.S.C. § 2617.

2. At all times relevant hereto, Centura Health ("Centura") was an employer of more than 15 employees.

3. Venue is proper in this Court as the unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

4. Cawiezell is a female individual over 40 years of age residing in Colorado Springs, Colorado.

5. Centura is a health care organization comprised of 12 hospitals and other health care facilities in Colorado.

6. Centura employs 13,000 people in Colorado.

## ADMINISTRATIVE PROCEDURES

7. Within 300 days of the occurrence of the acts complained of below, Plaintiff filed Charges of Discrimination with the Colorado Civil Rights Division ("CCRD").

8. On December 8, 2007, the CCRD issued a determination of No Probable Cause concerning Cawiezell's allegation of harassment based on sex and/or age and Probable Cause concerning her allegation of retaliation for engaging in a protected activity.

9. On January 22, 2008, the CCRD issued a Notice of Right to Sue letter concerning the allegation of retaliation.

## FACTUAL ALLEGATIONS

10. Plaintiff incorporates her prior allegations herein.

11. Penrose Community Hospital ("PCH") in Colorado Springs is a hospital in the Centura organization.

12. From November 1991 to February 13, 2007, Cawiezell was employed in the Radiology Department of PCH ("the Department") as a radiology technologist.

13. Beginning in approximately 2001, Linda Yannetsos ("Yannetsos") was the Department Manager and Cawiezell's immediate supervisor.

14. Yannetsos discriminated against Cawiezell on the basis of her age. She allowed two young radiology technologists, Melissa Costello ("Costello") and Christy Broughton ("Broughton"), to avoid their fair share of work, leaving a disproportionate amount for Cawiezell and others and causing patients to wait an inordinate amount of time.

15. Sam Sadorus ("Sadorus") became a radiology technologist in the Department approximately two years after Cawiezell started working there. Over the course of his employment at PCH, Sadorus harassed Cawiezell because of her age and sex. For example, on several occasions as recently as the first part of 2006, when Cawiezell arrived at work, Sadorus would comment that she was "nipply," meaning that her nipples showed.

16. When Cawiezell would leave the room to use the restroom, Sadorus would ask her if she was having bladder problems. If she spoke assertively or said something he did not agree with, he would ask, "Are you taking hormones?"

17. Several years ago on one occasion, he walked up behind Cawiezell, put his arm around her and pulled her back into his chest. As recently as May of 2006 it was reported that he had touched a female student inappropriately.

18. On April 17, 2006, Cawiezell became frustrated when she again saw a patient waiting and Broughton, Yannetsos and Saderus not working. She confronted them about "not carrying their weight". Following the incident, Sadorus and Broughton falsely alleged that Cawiezell was guilty of frequent outbursts of temper and was a threat to them at work.

19. On or about April 19, 2006, Caweizell was placed on administrative leave without pay. She was later reimbursed for the lost wages.

20. While on administrative leave following her suspension, in conversations with Cecilia Peat ("Peat") from the Human Resources Department of PCH, Cawiezell complained of age and/or sex discrimination.

21. In May 2006, in a conversation with Andrea Coleman ("Coleman"), Chief Operating Officer of PCH, Cawiezell complained of being discriminated against on the basis of her age and/or sex.

22. Following her suspension on April 19, 2006, Cawiezell was subjected to retaliation for complaining of age and/or sex discrimination.

23. Cawiezell's suspension continued even though PCH officials knew that the accusations against her were false and the only complaints lodged against her came from a man she had accused of harassment and a woman she had accused of being the beneficiary of age discrimination.

24. In response to Cawiezell's complaints and the complaints of others, in May 2006, PCH retained the Mountain States Employers Council, Inc. ("Mountain States") to conduct an assessment of operations in the Department.

25. Cawiezell was among those who were interviewed. She complained of the preferential treatment given the younger workers and sexual harassment of female employees by Sadorus.

26. On May 10, 2006, while still on administrative leave, Cawiezell received a letter from Coleman telling her she could return to work and be assigned to the Pain Clinic.

27. Cawiezell returned to PCH to work in the Pain Clinic on June 5, 2006.

28. After returning to work, Cawiezell continued to be subjected to sex and/or age discrimination and to retaliation for having complained about sex and/or age discrimination.

29. From June 5, 2006 through November 10, 2006, Cawiezell was subjected to a hostile work environment which altered the terms and conditions of her employment because of her sex and/ or age and/or in retaliation for her complaining of discrimination.

30. Cawiezell was scheduled to work in the Pain Clinic from 6:00 a.m. until 2:30 p.m. In a document dated May 17, 2006 which was prepared by Peat, Cawiezell was informed that, "Whenever possible, a technologist will be scheduled to cover at the end of your shift if the Pain Clinic has the need. However, on days where there is no coverage available, you will be expected to stay to care for the patients."

31. However, Yannetsos was still manager of the Department and she refused to send technologists to the Pain Clinic to relieve Cawiezell.

32. Within a day of returning to work, Cawiezell was reprimanded by her supervisor for not smiling at or speaking to her harasser, Sadorus.

33. Following completion of the assessment by Mountain States, on August 14, 2006, Yannetsos was removed from her position and Helen Ballard ("Ballard") was appointed interim manager of the Department.

5

34. On or about August 21, 2006, Cawiezell submitted a complaint to the Colorado Civil Rights Division ("CCRD") complaining that she had been discriminated against because of her age and sex and in retaliation for complaining about sex and age discrimination. The day after Cawiezell mailed the complaint, she told Ballard that she had filed it.

35. At a meeting with Cawiezell sometime in May and again on August 14, 2006, Coleman told Cawiezell that she would not have to return to work in the Department until it was a "new department".

36. From June 5, 2006 through February 13, 2006, Ballard and other PCH officials discriminated against Cawiezell by demanding that she return to the Department while Sadorus and Broughton were still working in the Department. Sadorus and Broughton had both lied about Cawiezell and PCH had disciplined Cawiezell on the basis of those lies. On the other hand, Sadorus had not been disciplined for harassing Cawiezell because of her age or harassing Cawiezell and other females because of their sex. Neither Sadorus nor Broughton had been reprimanded for bringing false accusations against Cawiezell. The Department was not a "new department".

37. Cawiezell was afraid to return to work in the Department because she feared what Broughton and Sadorus would do to her. Cawiezell knew that another technologist, Carolyn Kreider ("Kreider"), had on one occasion accused Sadorus of being dishonest. Following that incident, Sadorus told another employee that he always "gets even".

38. Cawiezell told Ballard she was afraid of returning to work in the Department with Sadorus and Broughton because of the way they had treated her in the past. Ballard continued

6

to demand that Cawiezell return to work in the Department despite the fact that Cawiezell had work to do in the Pain Clinic, and the doctor and nurses in the Pain Clinic were happy to have her.

39. On November 7, 2006 while Cawiezell was at work in the Pain Clinic, she was summoned to a meeting with Ballard and HR representative Cecilia Peat. When Cawiezell arrived with a nurse from the Pain Clinic accompanying her as a witness, Ballard told her that her witness could not be present. At the meeting, Ballard told Cawiezell that she would be required to return to work in the Department on December 2, 2006.

40. On November 10, 2006, Ballard delivered a letter to Cawiezell while she worked in the Pain Clinic. Ballard was accompanied by three other people including Costello, one of the young women Cawiezell had complained was not doing her job. The letter reiterated that Cawiezell was required to return to work in the Department beginning December 2, 2006 and that, if she did not, she would be subject to corrective action "up to and including dismissal".

41. November 10, 2006, was Cawiezell's last day of work for PCH.

42. The discrimination Cawiezell had experienced since her suspension on April 19, 2006 caused her to suffer a serious health condition.

43. On or about November 11, 2006, after being advised by her doctor that she had a serious health condition which made her unable to perform the functions of her position, Cawiezell filed with Centura a written request for leave pursuant to the Family Medical Leave Act (FMLA).

44. Because of her sex and/or age and in retaliation for complaining about discrimination, she was denied FMLA leave.

45. After two days off work, Cawiezell was contacted by Peat and told she was seven hours short of the 1,250 hours of service she needed to be eligible for FMLA leave.

46. Cawiezell discussed Centura's denial of her request for FMLA leave with Rosalinda Huffman ("Huffman") of the U.S. Department of Labor. In November 2006, Huffman met with Centura. Huffman told Centura that, if Cawiezell were given credit for lunch periods she had worked through, she would be eligible for FMLA. In response, the representatives from Centura said that they were no longer willing to give Cawiezell credit for the administrative leave she was on in April, May and June of 2006. The representatives from Centura said Cawiezell was still not eligible for FMLA leave.

47. Cawiezell was placed on non-paid, non-FMLA leave. Because Centura stopped paying its portion of the monthly premium for her medical insurance, Cawiezell became uninsured.

48. Because of her sex and/or age and in retaliation for Caweizell complaining about discrimination, on February 13, 2007, she was terminated.

49. In November 2006, Cawiezell was replaced in the Pain Clinic by a male who was less than 40 years of age.

50. Although PCH officials repeatedly told Cawiezell she could not work in the Pain Clinic without also rotating through the Department, neither her replacement, nor other techs, were required to rotate.

8

**FIRST CAUSE OF ACTION: TITLE VII SEX DISCRIMINATION**

51. Cawiezell incorporates her prior allegations herein. Cawiezell is a member of a protected class, female.

52. Based upon her gender, Cawiezell was subjected to discrimination in the terms and conditions of her employment and was terminated.

53. The conduct of Centura was discriminatory, reckless, willful, intentional, malicious and/or deliberately indifferent to Cawiezell's rights.

54. As a result of the actions of Centura, Cawiezell suffered damages.

**SECOND CAUSE OF ACTION: AGE DISCRIMINATION (ADEA)**

55. Cawiezell incorporates her prior allegations and cause of action herein.

56. Cawiezell is a member of a protected class, a person over the age of 40.

57. Based on her age, Cawiezell was subjected to discrimination in the terms and conditions of her employment and was terminated.

58. The conduct of Centura was discriminatory, reckless, willful, intentional, malicious and/or deliberately indifferent to Cawiezell's rights.

59. As a result of the actions of Centura, Cawiezell suffered damages.

**THIRD CAUSE OF ACTION: RETALIATION/TITLE VII**

60. Cawiezell incorporates her prior allegations and causes of action herein.

61. Cawiezell engaged in protected activity when she complained to PCH and Mountain States officials about sex discrimination and when she filed a complaint with CCRD alleging that she had been discriminated against.

62. In retaliation for engaging in a protected activity, Cawiezell was subjected to discrimination in the terms and conditions of her employment and was terminated.

63. The conduct of Centura was discriminatory, reckless, willful, intentional, malicious and/or deliberately indifferent to Cawiezell's rights.

64. As a result of the actions of Centura, Cawiezell suffered damages.

**FOURTH CAUSE OF ACTION: RETALIATION/ADEA**

65. Cawiezell incorporates her prior allegations and causes of action herein.

66. Cawiezell engaged in protected activity when she complained to PCH and Mountain States officials about age discrimination and when she filed a complaint with CCRD alleging that she had been discriminated against.

67. In retaliation for Cawiezell engaging in a protected activity, she was subjected to discrimination in the terms and conditions of her employment and was terminated.

68. As a result of the actions of Centura, Cawiezell suffered damages.

**FIFTH CAUSE OF ACTION: INTERFERENCE WITH FMLA**

69. Cawiezell was eligible for FMLA.

70. Cawiezell requested FMLA leave for a serious health condition.

71. Centura unlawfully denied Cawiezell FMLA leave and the protections of the Act.

72. Centura's interference with Cawiezell's rights under the Act caused her to suffer damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendant and award her all relief as allowed by law, including, but not limited to, the following:

a. Actual economic damages as established at trial;

b. Compensatory damages including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

c. All legal and equitable relief allowed by law;

d. Front pay and back pay;

e. Liquidated damages;

f. Punitive damages allowed by law in an amount to be determined at trial;

g. Pre-judgment and post-judgment interest at the legal rate;

h. Attorney's fees and costs; and

f. Such further relief as justice requires.


**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES TRIABLE.**

Elwyn F. Schaefer & Associates, P.C.

s/ Elwyn F. Schaefer
Elwyn F. Schaefer
1801 Broadway, Suite 500
Denver, CO 80202
(303) 825-1961
Attorney for Plaintiff

s/ Scott F. Reese
Scott F. Reese
795 W. Birch Court, Suite 100
Louisville, CO 80027
303-665-4448
Attorney for Plaintiff

Plaintiff's Address:
Ms. Marcella Cawiezell
2862 Country Club Place
Colorado Springs, CO 80909